IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **MERITAGE HOMES, LLC,** § § § *Plaintiff*, § § **v.** § § **CITY OF CIBOLO, MAYOR STOSH BOYLE, COUNCILMEMBER REGGIE BONE, COUNCILMEMBER MARK ALLEN and COUNCILMEMBER JOEL HICKS, each in their official and individual capacities,** § § § § § § § § § *Defendants.* § | | CIVIL ACTION NO. 1:21-cv-00695 |

## PLAINTIFF'S ORIGINAL COMPLAINT

Meritage Homes, LLC, Plaintiff in the above-captioned civil action complains of the following causes of action against Defendants City of Cibolo, Texas, Mayor Stosh Boyle, Councilmember Reggie Bone, Councilmember Mark Allen and Councilmember Joel Hicks, and alleges as follows:

### SUMMARY

1. This lawsuit is a result of a municipality's decision to deny a legally compliant plat application submitted by Meritage Homes, LLC ("Meritage") on land located outside of the City of Cibolo, Texas ("City") based on the provision of sanitary sewer service. The City does not have the legal authority to regulate, provide or control sanitary sewer service to Meritage's property. Meritage is requesting the Court to command the City and/or the members of the Planning and Zoning Commission ("P&Z") to approve and record the final plat.

## PARTIES

2. Plaintiff Meritage Homes, LLC ("Meritage") is a Texas limited liability company that owns land in Guadalupe County, Texas. Meritage's address is 2727 W. Bitters Rd., Suite 200, San Antonio, Texas 78048.

3. Defendant City of Cibolo, Texas ("City"), is a municipal corporation duly organized and existing under the laws of the State of Texas and located in Guadalupe County, Texas. City Secretary Peggy Cimics shall be served with process at 200 S. Main Street, Cibolo, TX 78108.

4. Defendant Mayor Stosh Boyle ("Mayor") is Mayor for the City of Cibolo, Texas. City Secretary Peggy Cimics shall be served with process on Mayor's behalf at 200 S. Main Street, Cibolo, TX 78108.

5. Defendant Councilmember Reggie Bone ("Bone") is a member of the City Council of the City of Cibolo, Texas. City Secretary Peggy Cimics shall be served with process on Bone's behalf at 200 S. Main Street, Cibolo, TX 78108.

6. Defendant Councilmember Mark Allen ("Allen") is a member of the City Council of the City of Cibolo, Texas. City Secretary Peggy Cimics shall be served with process on Allen's behalf at 200 S. Main Street, Cibolo, TX 78108.

7. Defendant Councilmember Joel Hicks ("Hicks") is a member of the City Council of the City of Cibolo, Texas. City Secretary Peggy Cimics shall be served with process on Hicks' behalf at 200 S. Main Street, Cibolo, TX 78108.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that the controversy arises under the Constitution, laws, or treaties of the United States. This Court also has jurisdiction under 28 U.S.C. § 1343(a)(3) because this is a civil action "to redress the

deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;" under 28 U.S.C. § 1367(a), which provides supplemental jurisdiction over state law claims so related to claims in an action within this Court's original jurisdiction that they form part of the same case or controversy; under 28 U.S.C. § 2201, to secure declaratory relief; under 28 U.S.C. § 2202 to secure injunctive relief; and under 42 U.S.C. § 1988, to award attorney's fees.

9. Venue is properly vested in this Court pursuant to 28 U.S.C. § 1391(b) because the City is located within the judicial district of this Court and the causes of action involve land located within the judicial district of this Court.

10. The City does not enjoy immunity with respect to the claims asserted in this Complaint due to the City's violations of Plaintiff's constitutional rights, inverse condemnation/regulatory takings, and violations of Plaintiff's civil rights under Title 42 of the United States Code.

## NATURE OF THE ACTION

11. Meritage is the owner of a large tract ("Property") located in the extraterritorial jurisdiction ("ETJ") of the City. The City has platting authority in its ETJ. The Property consists of four phases or units. Meritage purchased Units 1 and 2 on January 28, 2020 and Unit 4 on September 18, 2020. Unit 3 is under contract to purchase by Meritage.

12. The Property was previously owned by Mosaic Development ("Mosaic"). On or about July 24, 2018, the Cibolo City Council approved a land study submitted by Mosaic which is the first permit in the series of permits for a residential development project pursuant to Chapter 245, Tex. Loc. Gov't Code. One of the conditions to City approval was that "prior to platting, all

utilities including a permanent wastewater solution have been officially made available to the entirety of the tract." Meritage met this condition.

13. A major bone of contention for the City has been the providing of centralized sanitary service in its ETJ. The State's sewer certificate of convenience and necessity ("CCN") for the Property is owned solely by Green Valley Special Utility District ("GVSUD"). As the CCN owner, GVSUD is the only governmental entity that can provide sewer service to the Property. A true and correct copy of the City's wastewater segment of its current comprehensive plan is attached hereto as <u>Exhibit A</u>. It does not show any plans for the City to provide sanitary sewer service to the Property in the future.

14. On or about December 19, 2019, Mosaic and GVSUD entered into the Green Valley Special Utility District Wastewater Non-Standard Service Agreement ("Service Agreement"). A true and correct copy of the Service Agreement is attached hereto as <u>Exhibit B</u>. Meritage is Mosaic's successor in interest to the Service Agreement. Under the Service Agreement, it was anticipated that GVSUD would expand its collection system to handle wastewater from the development. The parties understood (and the City was aware) that funding would need to be obtained by GVSUD to pay for the expansion. In addition, the expansion would likely not be completed before houses were completed in Unit 1. It was understood by all parties that pump and haul would be utilized until the GVSUD's permanent system expansion was completed.

15. According to the City's subdivision ordinance, the next permit in the series of permits for a development project is the preliminary plat. On or about November 13, 2019, the City Planning and Zoning Commission ("P&Z") approved a preliminary plat for Units 1-3 of Meritage's development. A true and correct copy of the approved preliminary plat is attached as

Exhibit C. The preliminary plat approval included the following conditions of approval regarding sanitary sewer service: Have a signed Utility Service Agreement for Water and Wastewater from GVSUD for both temporary and permanent service. Meritage satisfied this condition.

16. On or about April 15, 2020, a predevelopment meeting was held with Meritage, City and GVSUD staff to discuss the Unit 1 development. The sanitary sewer pump and haul option was discussed in detail with all parties along with other infrastructure issues.

17. The next set of permits for Meritage's development according to the City subdivision ordinance are the construction drawings for the public infrastructure for the subdivision development. Meritage's engineers proceeded to prepare construction drawings in reliance upon input provided by the City and GVSUD. Meritage submitted construction drawings to the City for the Unit 1 infrastructure on or about May 4, 2020. Among the civil drawing sheets approved by the City were those for sanitary sewer improvements as shown as Exhibit D. City comments on the sanitary sewer improvement plans include the following: Note 1: Required additional details for the tank pad as well as the road. Note 2: Require details for the concrete driveway. Note 3: The hauling truck must be completely on the lot during pumping operations and it cannot be crossing the sidewalk which is shown on the plan. Note 4: Provide additional details for the pumps, manufacturer, type, etc. Note 7: Is there an alarm system associated with the relay system? Note 8: What is the height and type of temporary fence? Meritage satisfied these conditions.

18. Another development meeting was held with the City on July 9, 2020. By that meeting, Meritage had entered into a contract to purchase the Unit 4 property from Mosaic. The parties agreed to an alternative driveway location desired by the City which necessitated a change to the approved land study. Cibolo agreed to finalize its review of the infrastructure plans for

Unit 1 so that, once approved, Meritage could submit the Unit 1 final plat for consideration by the P&Z. The City agreed to allow infrastructure construction to begin since the plans were close to final approval.

19. On October 14, 2020, an amended land study which included the Unit 4 tract was approved by P&Z (5-2 vote) and recommended to City Council for approval. P&Z commented that any final plat within the land study, amended or not, would be required to meet the conditions of the original land study approval, including the following on sanitary sewer service:

    a. Have a signed utility Service Agreement for water and wastewater from GVSUD, both temporary and permanent; and

    b. Provide documentation from all governmental bodies with regulatory enforcement jurisdiction including Guadalupe County, Environmental Health Department, if applicable, showing review and approval of pump and haul agreement design of water and wastewater, including effluent storage facilities.

20. The City Council took no further action on the land study amendment by November 13, 2020, resulting in its official approval on that date.

21. In reliance upon the approved permits, Meritage spent approximately $4.8 million to construct the infrastructure approved by the City for Unit 1. All of the infrastructure needed for Unit 1 was constructed by Meritage and inspected by the City.

22. All of the conditions to preliminary plat and amended land study approval were addressed by Meritage and the requisite documentation was sent to the City. On or about May 12, 2021 the P&Z recommended approval for the final plat for Legendary Trails Subdivision Unit 1 ("Final Plat") with the following conditions pursuant to Section 212.0091 of the Texas Local Government Code:

    a. Produce official letter of GVSUD funding of sewer line from FM 78 to development;

    b.    Revise Service Agreement to include Contingency Plan for safety and emergency;

    c.    Produce GVSUD 100% Engineer Plan of Sewer Line from Treatment Plant to Development;

    d.    Seventy-five (75) homes only allowed on Pump-and-Haul system; and

    e.    Five hundred (500) gallons per dwelling unit calculation and storage of tanks.

23.    Because GVSUD has sole regulatory authority with respect to sanitary service in this portion of the City's ETJ, a letter responding to each of the conditions was procured from the agency. Each condition to the May 12, 2021 approval was appropriately addressed by GVSUD.

24.    Pursuant to § 212.0093, Tex. Loc. Gov't Code, Meritage's counsel forwarded correspondence dated June 11, 2021 which contained Meritage's response to the May 12, 2021 conditional approval and requested that the P&Z approve the Final Plat within 15 days as required by Section 212.0095 of the Texas Local Government Code.

25.    The P&Z considered the Final Plat at its June 26, 2021 meeting and unanimously voted to deny the Final Plat for pretextual reasons. Meritage's counsel then forwarded the correspondence attached as <u>Exhibit E</u> (which includes counsel's June 11 letter) on July 7, 2021 demanding that the P&Z reconsider its negative vote at the following P&Z meeting.

26.    The pretextual reasons given by the City to deny the Final Plat are as follows:

    a.    *Under TLGC 212.010 it fails to take into account access to an extension of a sewer main, there is no funding, no construction plan, or easements required for permanent access to the sewer.*

    b.    *It fails to conform to our UDC, and it fails to promote the health and safety, morals and general welfare of the City of Cibolo and it fails to provide for a safe, orderly and healthful development of our municipality.*

    c.    *There is no contract or provision for the lots not discussed in the pump and haul contract. The contract that does exist does not provide adequate safeguards if one or more entities involved becomes or is in default.*

   d. *The sewer line extension is too early in the planning stages to provide continuous and adequate reassurance of service.*

   e. *Our UDC 2018 also references 20.3.3 ac and UDC 2021 20.3.3 g3. So we believe that the approval of the plat would be harmful to the health, safety and general welfare of our city because of the extreme possibilities of leaks and/or spills in using pump and haul and the smell as well as the risk of overflowing equipment if power fails or the trucks are unable to reach the tank to empty them due to weather or equipment failure.*

27. The pretextual reasons violate § 212.0095(c), Tex. Loc. Gov't Code. This section requires that the City "approve a previously conditionally approved . . . plat if the response adequately addresses each condition of the conditional approval." In this case Meritage's June 11, 2021 response legally addressed the May 12, 2021 conditions of approval. The City is not statutorily authorized to add conditions of approval that were not expressly stated in the May 12, 2021, conditions. Pursuant to § 212.0099, Tex. Loc. Gov't Code, the City has not met its burden "by clear and convincing evidence that the disapproval meets the requirements of this subchapter or any applicable case law."

28. The pretextual reasons also violate the statute because they are in addition to the conditions imposed with the May 12, 2021 approval. Furthermore, the stated reasons do not comply with state law as follows:

   a. *Section 212.010, Tex. Loc. Gov't Code, states that a plat must be approved if it complies with the City's comprehensive plan. The City has enacted a comprehensive plan showing GVSUD serving this portion of the City's ETJ. Therefore, the Final Plat complies.*

   b. *The City states that the Final Plat "fails to conform to our UDC" without citing to a specific provision as required in § 212.0092, Tex. Loc. Gov't Code. Further, the Property is located outside the corporate limits and solely within GVSUD's CCN. Thus, it does not impact safe orderly development within the city limits.*

   c. *GVSUD's contract with Meritage is not subject to City review or approval. Regardless, GVSUD has agreed that more than 75 houses in the development can be served by pump and haul.*

    d.    *The Texas Water Development Board has approved funding in the amount of $15,725,000.00 to extend the referenced sewer line. According to GVSUD's prior communications with the City the construction will be completed by Spring 2022. While the City has no jurisdiction over sewer service in the ETJ, there is no support for the statement the sewer line extension is too early in the planning process.*

    e.    *The City's references to UDC §§ 20.3.3 do not support the Final Plat denial. Cibolo has approved pump and haul in the ETJ and is actually a pump and haul provider within its corporate limits. Again, the sanitary sewer service is provided by GVSUD and does not impact city residents.*

29. At its July 14, 2021 meeting, the Chair asked the P&Z members if anyone would make a motion to reconsider the June 26, 2021 Final Plat denial. None of the members were willing to make such a motion. Meritage's counsel then sent a letter dated July 29, 2021 demanding that the Final Plat be certified for approval no later than August 2, 2021. A true and correct copy of the letter is attached as <u>Exhibit F</u>. The City Attorney responded on July 30, 2021 that the Final Plat would be considered by the City Council at its August 10 city council meeting. A true and correct copy of his letter is attached in <u>Exhibit G</u>.

30. The City Council voted at its August 10 meeting to deny the Final Plat 4.3. The individually named councilmembers voted to deny. Meritage has exhausted all administrative remedies prior to bringing suit.

## PLAINTIFF'S CLAIMS FOR RELIEF

## CLAIMS FOR RELIEF

First Cause of Action
(<u>Denial of Equal Protection</u>)

31. Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

32. For the reasons set forth herein, Defendants have discriminated against Plaintiff for no rational purpose and have denied Plaintiffs' equal protection rights. Defendants denied the Final Plat based on pretextual and invalid reasons, including that Meritage should not be allowed

to use pump and haul for a temporary timeframe until GUSVD completed the sanitary sewer infrastructure construction.  But GVSUD currently authorizes and/or physically operates pump and haul operations within its extraterritorial and corporate limits.

33.     If the City's denial based on pump and haul concerns had a true public purpose, then they would be applied in the same way to all land within its jurisdictional boundaries.  The City's actions are arbitrary and capricious and violate the Equal Protection Clause, such Equal Protection being guaranteed to Plaintiff by Article 1, Section 3 of the Texas Constitution and by the Fifth and Fourteenth Amendments to the United States Constitution.

34.     Plaintiff further seeks the actual damages pursuant to 42 U.S.C. § 1983 and attorneys' fees pursuant to 42 U.S.C. § 1988(b) based on Defendants' violation of the Fifth and Fourteenth Amendments of the United States Constitution.  Damages are not authorized by Texas courts for equal protection violations under the Texas Constitution.

Second Cause of Action
(<u>Denial of Due Process and Due Course</u>)

35.     Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

36.     For the reasons set forth herein, the City has deprived Plaintiff of its due process and due course protections under the Fifth and Fourteenth Amendments to the United States Constitution and Article 1, Section 19 of the Texas Constitution.  Plaintiff has a constitutionally based property right to Final Plat approval and recordation based upon the nondiscretionary obligations set forth under Texas law.  Any reasonable voting member of the P&Z would know that the City's actions in denying the Final Plat violated state law, lack a reasonable basis and are arbitrary and capricious.

37.     Plaintiff further seeks the actual damages pursuant to 42 U.S.C. § 1983 and attorneys' fees pursuant to 42 U.S.C. § 1988(b) based on Defendants' violation of the Fifth and

Fourteenth Amendments of the United States Constitution.  Damages are not authorized by Texas courts for due process/due recourse violations under the Texas Constitution.

Third Cause of Action
(<u>Inverse Condemnation</u>)

38.Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

39.The City's intentional actions have deprived Plaintiff of its reasonable investment-backed expectations and constitute a regulatory taking under both the Texas and United States Constitutions.  Plaintiff is entitled to recover either permanent damages for this taking or temporary damages.  Plaintiff's temporary damages are estimated to be $14,872.00/day.

40.Plaintiff further seeks its actual just compensation damages pursuant to Texas Constitution, 42 U.S.C. § 1983 and attorneys' fees pursuant to 42 U.S.C. § 1988(b) based on Defendants' violation of the Fifth and Fourteenth Amendments of the United States Constitution.

Fourth Cause of Action
(<u>Chapter 245 Rights</u>)

41.Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

42.Tex. Loc. Gov't Code § 245.006(a) provides that: "(a) This chapter may be enforced only through mandamus or declaratory or injunctive relief.  (b) A political subdivision's immunity from suit is waived in regard to an action under this chapter.  (c) A court may award court costs and reasonable and necessary attorney's fees to the prevailing party in an action under this chapter."

43.Pursuant to Tex. Loc. Gov't Code § 245.006(a), the Court should declare that the policies, rules, and regulations imposed by Defendants after the first permit for the project on the Meritage Property (the initial land study) cannot legally be applied to Plaintiffs' development project, including the Final Plat.

44.Plaintiff further seeks its reasonable and necessary attorneys' fees pursuant to Tex. Loc. Gov't Code § 245.006(c).

Seventh Cause of Action
(<u>Declaratory Relief</u>)

45. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

46. Plaintiff seeks a declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, that the action by the City Council individual defendants in denying the Final Plat application was *ultra vires*, unauthorized, and null and void pursuant to Chapter 212, Tex. Loc. Gov't Code.

47. Plaintiff seeks a declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and as authorized by Tex. Loc. Gov't Code § 245.006(a), that the Defendants' attempts to apply the City's adverse policies, rules, and regulations enacted after the first permit for the project on the Meritage Property was submitted to the City are unauthorized under Tex. Loc. Gov't Code § 245 and are therefore *ultra vires* and null and void. Defendants' denial of the Final for the Meritage Property on or about June 26, 2021, is unauthorized under Chapter 245 and its denial is therefore *ultra vires* and null and void.

48. Plaintiff seeks a declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 that the City's denial of the Final Plat violates § 212.0095, Tex. Loc. Gov't Code and is therefore null and void.

49. Plaintiff seeks a declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, that the individual City Council Defendants acted without legal authority in denying the Final Plat because approval was ministerial and nondiscretionary under Chapter 212, Tex. Loc. Gov't Code.

Eighth Cause of Action
(<u>Mandamus Relief</u>)

50. The Final Plat meets all valid City development regulations. Approval of a Final Plat that meets all valid City requirements is mandatory as a matter of law. The court generally

applies a three-part test which is met in this case: whether (1) the plaintiff's claim is clear and certain; (2) the duty is ministerial and so plainly prescribed as to be free from doubt; and (3) no other adequate remedy is available.

51. Pursuant to Rule 21 of the Federal Rules of Civil Procedures Plaintiff seeks a writ of mandamus ordering Defendants to certify and record the Final Plat without conditions pursuant to § 212.0115, Tex. Loc. Govt. Code.

Ninth Cause of Action
(Injunctive Relief)

52. Plaintiff requests a preliminary and permanent injunction to enjoin the unlawful actions of Defendants as described herein. A plaintiff seeking a preliminary and permanent injunction must establish: (1) a likelihood of success on the merits; (2) no adequate remedy at law; (3) irreparable harm in the absence of relief; (4) the balance of hardships; (5) and that an injunction is in the public interest. *See Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008); *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

53. Plaintiff has a substantial likelihood of succeeding on the merits of this action because the City and the individual Defendants lack authority to prevent the development of the Meritage Property pursuant to the Final Plat.

54. Remedies available at law such as monetary damages are inadequate to fully compensate Plaintiff for its injury. There is significant risk that Plaintiff will not receive all of its requested monetary relief. Under Texas law, injury to real property is considered to be unique which makes it difficult to determine appropriate monetary damages, thereby resulting in irreparable harm to Plaintiff.

55. Defendants' actions cause and are causing Plaintiff imminent and irreparable injury that can only be redressed by injunctive action of this Court. Plaintiff cannot proceed to sell houses

and lots on the remaining acreage because the City has illegally and arbitrarily denied the Final Plat.

56. The factual background plainly demonstrates that the injury that Plaintiff faces outweighs the injury that would be sustained by Defendants as a result of the injunctive relief.

57. An injunction prohibiting Defendants from continuing its wholly unreasonable and unlawful conduct would not be adverse to the public interest. Rather, such an injunction would be consistent with State law and would allow development of the Meritage Property to proceed.

58. Accordingly, pursuant to Fed. R. Civ. Proc. 65, this Court should issue a preliminary and permanent injunction enjoining Defendants, all officers, agents, and employees of Defendants, and all persons or entities acting in concert with Defendants, from preventing or impeding the approval of the Final Plat and other development applications for the Meritage Property.

### Eighth Cause of Action
### (Attorneys' Fees)

59. Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

60. Under the authority of 42 USC § 1988, Plaintiffs claim reasonable attorneys' fees, both in the trial of this cause and in connection with any subsequent appeal.

61. Under the authority of Tex. Loc. Gov't Code § 245.006(c), Plaintiffs claim reasonable and necessary attorneys' fees.

### JURY TRIAL

62. Plaintiffs hereby demand a jury trial.

### PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request as follows:

    a.    That the Court enjoin Defendant from taking any action to prevent and/or delay the approval and recordation of this Final Plat;

  b.  That the Court make the declarations requested herein;

  c.  That the Court order declaratory relief as requested by Plaintiffs;

  d.  That the Court award damages, cost of suit, attorneys' fees and prejudgment and post-judgment interest as provided by law; and

  e.  That the Court award such other and further relief to which Plaintiffs may be justly entitled.

    Respectfully submitted,

    WINSTEAD PC
    500 Winstead Building
    2728 N. Harwood Street
    Dallas, Texas  75201
    (214) 745-5745 – Phone
    (214) 745-5390 – Fax


    By: /s/ *Arthur J. Anderson*
      Arthur J. Anderson
      SBN: 01165957
      aanderson@winstead.com
      James Ruiz
      SBN: 17385860
      jruiz@winstead.com

    **ATTORNEYS FOR PLAINTIFF**